IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CyberDefender Corporation,[1] | ) | Case No.: 12-10633 (BLS) |
| | ) | |
| Debtor. | ) | |

**APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN MUIRFIELD PARTNERS AS CORPORATE COMMUNICATIONS CONSULTANT**

CyberDefender Corporation, a Delaware corporation (the "Debtor") submits this application (the "Application") for entry of an order (the "Order"), in substantially the form attached hereto pursuant to sections 327(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the employment and retention of Muirfield Partners ("Muirfield") as corporate communications consultant in this chapter 11 case, *nunc pro tunc* to the Petition Date (as defined below). The facts and circumstances supporting this Application are set forth in the *Declaration of Maya Pogoda in Support of Application for Order Authorizing Debtor to Employ and Retain Muirfield Partners as Corporate Communications Consultant* (the "Pogoda Declaration"), attached hereto as Exhibit A. In support of the Application, the Debtor respectfully represents as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are (5833). The Debtor's address is: 617 West 7th Street, Suite 1000, Los Angeles, CA 90017.

DOCS_LA:250561.3 16362-001

## Jurisdiction And Venue

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Bankruptcy Code section 327 and Rules 2014 and 2016 of the Bankruptcy Rules.

## Background

4. On February 23, 2012 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 the Bankruptcy Code.

5. The Debtor has continued in possession of its property and has continued to operate and manage its businesses as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. No request has been made for the appointment of a trustee or an examiner in this case, and no official committee has yet been appointed by the Office of the United States Trustee.

7. The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, are set forth in detail in the Declaration of Kevin Harris, Interim Chief Executive Officer and Chief Financial Officer, in Support of First Day Motions (the "Harris Declaration") [Docket No. 3], filed on the Petition Date and incorporated herein by reference.

**Relief Requested**

8. By this Application, pursuant to section 327(a) of the Bankruptcy Code, the Debtor seeks entry of an order authorizing it to retain and employ Muirfield, *nunc pro tunc* to the Petition Date, as corporate communications consultant in this chapter 11 case on the terms and subject to the conditions described below and set forth in the engagement letter between the Debtor and Muirfield, dated February 1, 2012 (the "Engagement Letter"), a copy of which is attached hereto as Exhibit B.

**Basis For Relief**

9. Section 327(a) of the Bankruptcy Code provides that a trustee or debtor in possession may employ disinterested professionals to assist in carrying out its duties. 11 U.S.C. § 327(a). For the reasons stated below, the Debtor submits that Muirfield's employment will assist it in carrying out its duties as a debtor in possession and maximize the value of its estate.

10. Muirfield is particularly well suited to serve as the Debtor's corporate communications consultant in this chapter 11 case. Formed in 2001, Muirfield specializes in addressing sensitive business situations that require communications strategies targeted to a variety of constituencies, including customers, employees, vendors, shareholders, bondholders and the media. Muirfield has substantial experience providing corporate communications services to corporations in connection with both in- and out-of-court restructurings. In particular, Ms. Pogoda – a Muirfield managing director and the lead corporate communications consultant in this case – has been involved in numerous bankruptcy cases including Freedom

Communications, Spansion, Inc., Claim Jumper Restaurants, Generation Brands, and Interstate Bakeries Corp.

11. The Debtor first engaged Muirfield to provide corporate communications services with respect to a possible chapter 11 filing, with the effective date of retention being February 1, 2012. During the period leading up to the Petition Date, Muirfield worked closely with the Debtor to develop a comprehensive communications strategy and materials which were used in the public announcement of this chapter 11 case.

12. Now that this chapter 11 case has commenced, the Debtor requires expert corporate communication services because its going concern value depends on the strength of its reputation. The uncertainty and stigma associated with an in-court restructuring may negatively affect the Debtor's reputation if not properly addressed and managed, causing the Debtor to lose business. The Debtor believes that Muirfield's services and advice will assist it in preserving its going concern value through this restructuring.

13. Further, many groups, including employees, customers, vendors, trade and other creditors, lenders, potential investors, governmental entities, the media and the general public will be interested in the Debtor's bankruptcy proceedings. The cooperative participation of many of these persons and entities will be necessary for the Debtor to successfully maintain the value of its business and estate. Muirfield will be able to assist the Debtor in protecting, retaining, and developing the goodwill and confidence of these constituencies and stakeholders.

14. Because Muirfield has extensive experience providing communications services to restructuring companies and because Muirfield provided extensive pre-petition advice

to the Debtor, the Debtor submits that Muirfield is uniquely situated to provide the Debtor with corporate communications during the pendency of this chapter 11 case.

15. Muirfield has agreed to represent the Debtor and charge, in connection with its professionals providing the Services related to this chapter 11 case, hourly rates for its services, which rates range from $175 to $400, depending on the particular professional. The hourly rates applicable to the professionals initially contemplated to represent the Debtor for the foregoing limited purposes are as follows: Maya Pogoda ($300) and Casey Chan ($175).

16. For services provided in connection with the administration of this chapter 11 case, Muirfield intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under section 330 of the Bankruptcy Code, the Local Rules, and orders of this Court.

17. Further, as set forth in the Engagement Letter, the Debtor agrees to defend and indemnify Muirfield against any loss or expense, including reasonable attorneys' fees and costs, that may be sustained as a result of any claim, suit or proceeding brought or threatened against Muirfield arising out of or in connection with the services to be rendered by Muirfield in this chapter 11 case. Notwithstanding the foregoing, Muirfield will not be entitled to indemnification for any claim arising out of or in connection with Muirfield's gross negligence of willful misconduct. Notwithstanding the indemnification provisions set forth in the

Engagement Letter, such indemnity is modified, to the extent necessary, by the proposed order on this Application as follows (the "Modified Indemnification Provisions"):

a. subject to the provisions of subparagraph (c), *infra*, the Debtor is authorized to indemnify, and shall indemnify, Muirfield in accordance with the Engagement Letter for any claim arising from, related to, or in connection with the services provided for in the Engagement Letter, but not for any claim arising from, related to, or in connection with Muirfield's postpetition performance of any other services unless such postpetition services and indemnification therefore are approved by the Bankruptcy Court;

b. that notwithstanding anything to the contrary in the Engagement Letter or the Pogoda Declaration, the Debtor shall have no obligation to indemnify Muirfield, or provide contribution or reimbursement to Muirfield, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Muirfield's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of Muirfield's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co., et al.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Muirfield should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Order;

c. if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this case, Muirfield believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, Muirfield must file an application therefore in this Court, and the Debtor may not pay any such amounts to Muirfield before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Muirfield for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Muirfield. All parties in interest shall retain the right to object to any demand by Muirfield for indemnification, contribution or reimbursement; and

d.  notwithstanding anything to the contrary in the Engagement Letter, neither Muirfield nor the Debtor will be entitled to any limitation of liability with respect to any claims related to or arising out of the Engagement Letter. Any such limitation of liability provisions contained in the Engagement Letter are null and void.

18. The Debtor submits that the proposed compensation and Modified Indemnification Provisions are customary and such employment terms are reasonable under section 327 of the Bankruptcy Code.

19. Further, the Debtor respectfully requests Muirfield be retained *nunc pro tunc* to the Petition Date. Since the Petition Date, Muirfield has provided valuable services that were time-sensitive and critical to the estates and maximizing value of the assets of the estate.

### Services To Be Rendered

20. The Debtor anticipates that Muirfield will render corporate communications services as needed throughout the course of this chapter 11 case. Subject to further order of this Court, Muirfield will be engaged to render professional services that may include, without limitation, developing public relations initiatives for the Debtor to maintain public confidence and internal morale during the chapter 11 proceeding, developing and implementing communications programs and related strategies and initiatives for communications with the Debtor's key constituencies, and writing and distributing press releases in connection with this chapter 11 case (the "Services").

### Disinterestedness of Muirfield

21. Muirfield has informed the Debtor that, except as may be set forth in the Pogoda Declaration, it (i) has no connection with the Debtor, its creditors, or other parties in interest in this chapter 11 case; (ii) does not hold any interest adverse to the Debtor's estate; and

(iii) believes it is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) thereof.

22. In connection with this proposed retention, Muirfield searched its client database to identify any client relationship with entities identified on <u>Schedule 1</u> to the Pogoda Declaration as potential parties in this chapter 11 case (the "Potential Parties-in-Interest"). In <u>Schedule 2</u> to the Pogoda Declaration, Muirfield discloses any relationship it may have with such Potential Parties-in-Interest. It is the Debtor's understanding that Muirfield will review its files periodically during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying relations exist or arise during the pendency of this chapter 11 case. To the extent that Muirfield discovers any new relevant facts or relationships bearing on the matters described herein during the period of Muirfield's retention, Muirfield will promptly file a supplemental declaration with this Court.

### **Disclosure of Compensation**

23. Prior to the Petition Date, Muirfield received a retainer fee in the amount of $10,000 for the Services (the "Retainer"). On February 21, 2011 Muirfield received an additional $7,100. Muirfield was paid approximately $12,810.00 from the Retainer, leaving an approximate retainer balance of $4,290.00 as of the Petition Date.

24. The Debtor has agreed to reimburse Muirfield for out-of-pocket expenses, which may include, but are not limited to, travel, printing, postage, messenger, telephone, fax, copy charges and courier services incurred by Muirfield. Muirfield has agreed to obtain the Debtor's approval before incurring any individual charge over $1,000.

25. As of the Petition Date, Muirfield did not hold a prepetition claim against the Debtor for services rendered. To the best of the Debtor's knowledge, and except as disclosed in the Pogoda Declaration, Muirfield has not provided services to the Debtor's creditors, equity security holders, or any other parties-in-interest, or its respective attorneys, in any matter relating to the Debtor or its estate.

## Notice

26. The Debtor has provided notice of the Application to: (a) the United States Trustee for the District of Delaware; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims; (c) the Debtor's senior secured lender, GR Match, LLC, and its counsel, if known; (d) the holders of subordinated note debt; and (e) all entities that have requested notice of the proceedings in this chapter 11 case pursuant to Bankruptcy Rule 2002. The Debtor submits that no other or further notice be given in light of the circumstances of this chapter 11 case.

WHEREFORE, the Debtor respectfully requests entry of an order (i) granting the relief requested herein, and (ii) granting the Debtor such other and further relief as the Court deems just and proper.

Dated: February 28, 2012

CyberDefender Corporation

By: *(signature)* Kevin Harris
Title: Interim Chief Executive Officer and Chief Financial Officer