## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CYBERDEFENDER CORPORATION | ) | |
| TECHNOLOGIES, INC., *et al.*, | ) | Case No. 12-10633 (BLS) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |

**Hearing Date: May 2, 2012, at 1:00 p.m.**
**Objection Deadline: April 26, 2012, by 5:00 p.m.**
**Related to Docket No. 10**

## OBJECTION OF CERTAIN HOLDERS OF 9% SUBORDINATED CONVERTIBLE PROMISSORY NOTES TO DEBTOR'S MOTION FOR APPROVAL OF THE SALE OF SUBSTANTIALLY ALL OF ITS ASSETS

The persons or entities identified on <u>Exhibit A</u> attached hereto (the "**Certain Noteholders**"), by their attorneys, object to the motion [Docket No. 10] (the "**Sale Motion**") of the Debtor, CyberDefender Corporation ("**Debtor**") seeking approval of the sale free and clear of all liens, claims and encumbrances of substantially all Debtor's assets (the "**Assets**") to GR Match, LLC ("**GRM**"). In support of this objection, the Certain Noteholders respectfully state as follows:

### Background

1.      The Certain Noteholders all purchased 9% Subordinated Convertible Promissory Notes due 13 months from original issue date (the "**9% Notes**") issued by the Debtor on September 28, 2011. The Debtor's obligations under the 9% Notes are secured by liens and security interests in and to Debtor's Assets, with such liens and security interests junior only to the liens and security interests, if any, held by GRM in the Debtor's Assets. True and correct copies of a representative copy of each of the 9% Notes, the Securities Purchase Agreement, the Security Agreement, the Subordination Agreement, and related documents in respect of the 9%

Notes are attached hereto as Exhibit B.  In all, approximately $2,100,000 in 9% Notes were issued by the Debtor.

2.     The Certain Noteholders understood when they purchased the 9% Notes that GRM asserted it had certain claims secured by liens and security interests in and to all of the Debtor's assets; and, further, on information and belief, that GRM significantly was involved in the Debtor's operations.[1]   Certain Noteholders also understood that the proceeds of the 9% Notes would be used in Debtor's business operations to improve Debtor's cash flow and viability, but that instead, some or all of the proceeds were used to make payments to GRM on account of its claims against Debtor.

3.     As set forth in the Sale Motion, the Debtor maintains its principal place of business in Los Angeles, California.  On information and belief, prior to May 24, 2010, the assets operated by the Debtor were held by the Debtor's predecessor, a California corporation. On information and belief, as of May 24, 2010, the Debtor's predecessor was merged into its wholly owned Delaware subsidiary, creating the Debtor as the entity in this bankruptcy case (but with no change in the operation of the Debtor's assets from the California corporation to the Delaware corporation).

4.     On February 23, 2012 (the "**Petition Date**"), the Debtor commenced this case by filing its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

---

[1]     In addition, even though not included as a shareholder of Debtor in this bankruptcy case, an entity that Certain Noteholders understand, on information and belief is an affiliate of GRM, Guthey-Renker Partners, Inc., is listed as a 60% shareholder of CyberDefender Corporation by the Morningstar service (*see* Exhibit C attached hereto) and in various public filings was identified as the holder of in excess of 20% of the stock of CyberDefender Corporation.

**Objections**

**A. The Sale Cannot Be Approved Free and Clear of Liens, Claims and Encumbrances Under 11 U.S.C. §363(f)**

5.       The Debtor seeks to sell its Assets to GRM free and clear of all liens, claims and encumbrances.  However, the sale price offered for the Assets is not greater than the face amount of all claims secured by liens and security interests in and to the Assets.

6.       The Bankruptcy Code allows a debtor to sell property free and clear of an interest in such property only if the interest is a lien and "the price at which such property is to be sold is greater that the aggregate value of all liens on such property."  11 U.S.C. § 363(f)(3).[2]

7.       Despite what appears to be a clear and unambiguous statutory provision, courts have differed on the meaning of "value" in subsection 363(f)(3).  Some have held that "value" means the "economic value" of the liens against the property to be sold while others have determined "value" means the "face value" of the secured claims.  *Compare, e.g.*, *In re Beker Indus. Corp.*, 63 B.R. 474, 475-78 (Bankr. S.D.N.Y. 1986) (court interpreted "value" to mean the economic value of the lien, as determined by the fair market value of the property to be sold) with *Criimi Mae Servs. L.P. v. WDH Howell, LLC (In re WDH Howell, LLC)*, 298 B.R. 527, 532-34 (D.N.J. 2003) ("***Criimi Mae***") ("value" means face value of the claims secured by liens).

8.       The Certain Noteholders are unaware of any case in the District of Delaware or the Third Circuit on this issue.  Both the 4th Circuit and the 9th Circuit BAP have followed the "face value" interpretation.  *See Richardson v. Pitt County (In re Stroud Wholesale, Inc.)*, 47 B.R. 999 (E.D.N.C. 1985), *aff'd mem*. 983 F.2d 1057 (4th Cir. 1986); *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (BAP 9th Cir. 2008).  The Certain Noteholders

---

[2]      Certain Noteholders submit that no other provision of section 363 of the Bankruptcy Code would authorize a sale of property free and clear of the liens and security interests of the Certain Noteholders.

submit that the decisions of courts holding that it is the face value of the claims secured by liens that is the operative measuring stick under section 363(f)(3) are the better reasoned and more persuasive authority, in light of the plain meaning of the statute and the Third Circuit's penchant for ruling on a "plain meaning" basis in bankruptcy matters. *See In re Philadelphia Newspapers, LLC,* 599 F.3d 298, 304 (3rd Cir. 2010) ("It is the cardinal canon of statutory interpretation that a court must begin with the statutory language. . . . 'When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete.'" (*quoting Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).

9.    In *Criimi Mae*, the New Jersey District Court aptly explained the fallacy of the reasoning of the courts that employ the economic value definition:

> If property encumbered by a senior lien securing a debt of $75,000 and a junior lien securing a debt of $50,000 is proposed to be sold for $100,000, the aggregate economic value of the liens is $100,000. If someone overbids and proposes to buy the property for $125,000, the aggregate economic value of the liens would increase to $125,000." The sale price could be greater than the aggregate economic value of the liens on a piece of property only if the property was underencumbered, i.e. the sale price also exceeded the face value of the liens. Thus, in the *Canonigo* example, "if the property were sold for $150,000, the aggregate economic value of the liens would still only be $125,000," because liens can never be worth more than their face value.
>
> Courts following the economic value approach have either overlooked or dodged this dilemma, allowing the sale free of liens even when the sale price equaled the aggregate economic value of the liens.

*Criimi Mae*, 298 B.R. at 533 (*quoting In re Canonigo*, 276 B.R. 257, 262-63 (N.D. Cal. 2002)).

10.    As the New Jersey District Court further observed, "[t]his conclusion is consistent with the 'general rule' that 'the bankruptcy court should not order property sold free and clear of liens unless the court is satisfied that the sale proceeds will fully compensate secured lienholders

and produce some equity for the benefit of the bankrupt's estate.'" *Id.* at 534 (*quoting In re Riverside Inv. P'ship*, 674 F.2d 634, 638–41 (7th Cir.1982)).

11.     That is not the case here, and, accordingly, the sale of Assets should not be approved free and clear of the liens and security interests held by Certain Noteholders.

**B.  The Sale Order Must Provide for Attachment of the Liens of the Certain Noteholders to the Proceeds of the Sale**

12.     In the event the Court nevertheless is inclined to approve the sale of assets to GRM, then the Sale Order must provide for the liens and security interests held by the Certain Noteholders to attach to the proceeds of sale.  Such proceeds would include the $250,000 cash consideration that is part of GRM's bid, which clearly is part of the consideration being provided by GRM in connection with the sale and, thus, is proceeds from the sale to which the liens and security interests held by the Certain Noteholders must attach.

**C.  The Sale Order Cannot Release GRM From any Third Party Liability It May Have**

13.     Paragraph 22 of the Sale Order contains a very long, cumbersome, and, frankly, not easily understandable release provision, which includes very broad definitions of terms like "Claims" and "Liens" and seems to grant GRM releases from even direct claims that may be brought by third parties, so long as there is any or some even remote nexus to the bankruptcy case.

14.     GRM is not entitled to a release of any non-debtor third-party liability that it may have as part of this sale process.  "[A] nondebtor release is a device that lends itself to abuse. By it, a nondebtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2nd Cir. 2005).  Section 524(e) of the Bankruptcy Code specifically provides that non-debtor parties are not entitled to a

discharge in a debtor's bankruptcy case. 11 U.S.C. § 524(e).  Yet a release is functionally the same thing as a discharge (or permanent injunction in the case of a confirmed chapter 11 plan). *Resorts Int'l Inc. v. Lowenschuss* (*In re Lowenschuss*), 67 F.3d 1394, 1401 (9th Cir. 1995) *cert. denied* 517 U.S. 1243.  This position is strengthened by the presence of section 524(g), which provides for non-debtor, third party releases in mass-tort asbestos cases if certain specific conditions are met.  "That Congress provided explicit authority to bankruptcy courts to issue injunctions in favor of the third parties in an extremely limited class of cases reinforced the conclusion that § 524(e) denies such authority in other, non-asbestos, cases."  *Id.* at 1402, n.6.

15.    Cases that allow for non-debtor releases limit such relief to those parties who affirmatively consent.  *See, e.g., In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999); *In re Specialty Equip. Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993); *In re Elsinore Shore Assocs.*, 91 B.R. 238, 252 (Bankr. D.N.J. 1988).  Non-consensual releases by a non-debtor of other non-debtor third parties are to be granted only in extraordinary cases, where the "hallmarks" of "fairness, necessity to the reorganization, and specific factual findings to support these conclusions" have been met.  *Gillman v. Continental Airlines* (*In re Continental Airlines*), 203 F.3d 203, 214 (3rd Cir. 2000).  Debtor has made no such showing.  Further, at this stage in the proceedings, where the case was filed a mere two months ago, and where no plan is on the table[3], Debtor cannot argue that these third party releases are necessary to its  reorganization.

---

[3]    The Certain Noteholders point out that the cases involving third party releases are brought in the context of confirmation of a plan, and the language contained therein. It is especially troubling to grant a third party release in the context of a sale under section 363 of the Bankruptcy Code.

16.     Further, this Court does not have jurisdiction to reach the non-debtor parties in order to enforce a third party release. "To extend [bankruptcy court] jurisdiction over non-debtor third parties by granting a release, regardless of its effect on the administration, is beyond this court's jurisdiction grant of authority. . . .'Jurisdiction exists only over the debtor and his property, and no further.'" *In re Elsinore Shore Assocs.*, 91 B.R. at 255 (*quoting In re A.J. Mackay Co.*, 50 B.R. 756, 763 (D. Utah 1985)).

17.     Therefore, the Certain Noteholders object to the Sale Order specifically to the extent that the Sale Order purports to provide GRM with any release of any liability it may have to third parties, including the Certain Noteholders with respect to the 9% Notes, or otherwise, as part of the proposed sale of Assets.

WHEREFORE, the Certain Noteholders respectfully request that the Sale Motion be denied; and/or such other relief as the Court deems just and proper.

Dated:  April 25, 2012                          STEVENS & LEE, P.C.


                                                   /s/ *John D. Demmy*
                                                John D. Demmy (DE Bar No. 2802)
                                                Maria Aprile Sawczuk (DE Bar No. 4304)
                                                1105 N. Market Street, 7th Floor
                                                Wilmington, DE 19801
                                                Telephone: 302.425.3308
                                                Email: jdd@stevenslee.com

                                                *Attorneys for Certain Noteholders as*
                                                *identified on Exhibit A attached hereto.*