**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CyberDefender Corporation, | ) | Case No.: 12-10633 (BLS) |
| | ) | |
| Debtor. | ) | **Objections Due: April 26, 2012 at 5:00 p.m. EDT** |
| | ) | **Hearing Date: May 2, 2012 at 1:00 p.m. EDT** |
| | ) | |
| | ) | **Re: D.I. 10, 123** |

**SEAN P. DOWNES' OBJECTION AND RESERVATION OF RIGHTS IN CONNECTION WITH THE DEBTOR'S PROPOSED SALE OF ASSETS TO GR MATCH, LLC**

Sean P. Downes ("Mr. Downes"), by and through his undersigned counsel, respectfully submits the following Objection and Reservation of Rights to the Debtor, CyberDefender Corporation's (the "Debtor") proposed sale of substantially all of its assets to GR Match, LLC ("GRM"), and in support thereof states as follows:

## I. FACTUAL BACKGROUND

1. On February 23, 2012 (the "Petition Date"), the Debtor filed with the Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. On the Petition Date, the Debtor also filed the *Debtor's Motion for Orders (A) Establishing Bidding Procedures In Connection With Sale Of Substantially All Assets Of The Debtor, (B) Approving The Form And Manner Of Notices, (C) Setting A Sale Hearing, (D) Authorizing The Sale Of The Assets Free And Clear Of All Liens, Claims, And Encumbrances, (E) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (F) Granting Related Relief* [Docket No. 10] (the "Sale Motion").

3. As of the Petition Date, the Debtor allegedly was indebted to GRM in the approximate amount of $15,732,080 in connection with certain pre-Petition Date loan

agreements and a media service agreement, all of which agreements are purportedly secured by the Debtor's assets, property, and/or other collateral. See Debtor's Schedule D [Docket No. 125]. Since the Petition Date, the Debtor has also obtained a DIP loan from GRM in the amount of $4,610,000. See Sale Motion, ¶ 26. Accordingly, the total amount of purported secured debt owed by the Debtor to GRM is approximately $20,342,080 (the "GRM Liens").

4. The Debtor has conceded that it is indebted to Mr. Downes in an amount not less than $3,100,000 (the "Downes Liens"), which amount is secured by a properly perfected pre-Petition Date security interest in substantially all of the Debtor's assets. See Debtor's Schedule D; see also Sale Motion, ¶¶ 19-20. The Downes Liens allegedly are subordinated to the pre-Petition Date portion of the GRM Liens. Id.

5. Pursuant to the Sale Motion, the Debtor seeks authority from the Court to sell (the "Sale") substantially all of its assets (the "Assets") free and clear of all liens and interests (including the Downes Liens) to GRM in accordance with the Asset Purchase Agreement (the "APA") attached to the Sale Motion, or alternatively, to the highest qualified bidder pursuant to the terms of the Sale Motion and the related proposed order.

6. By an amended Order dated March 29, 2012 [Docket No. 123] (the "Bid Procedures Order"), the Court approved the notice, bid, and sale procedures outlined in the Sale Motion.

7. Pursuant to the Bid Procedures Order, the deadline for parties to object to the Sale of the Assets is April 26, 2012, and the hearing on the Sale Motion is scheduled for May 2, 2012, at 1:00 p.m.

## II. OBJECTION AND RESERVATION OF RIGHTS – LEGAL ARGUMENT

8. For the following reasons, Mr. Downes objects to and/or reserves all rights in connection with the proposed Sale.

### A. The Downes Liens Should Attach To The Sale Proceeds

9. Paragraphs 29 and 35 of the Sale Motion and Article III, subsection 3.01 of the APA provide that the buyer (i.e., GRM or alternatively, the highest qualified bidder) of the Assets will pay to the Debtor a cash amount of $250,000 as part of the purchase price for the Assets. The Debtor seeks to sell the Assets free and clear of all liens, claims, encumbrances, and interests (collectively, the "Liens") that may attach to the Assets, with any such Liens attaching to all sale proceeds, including the current cash component of $250,000 (collectively, the "Sale Proceeds"). See Sale Motion, ¶¶ 67–73. Such Liens held by creditors and/or parties in interest would attach with the same validity, force, and effect that a creditor had prior to the Sale. Id.

10. Accordingly, Mr. Downes hereby reserves his rights to attach the Downes Liens to all of the Sale Proceeds with the same validity, force, and effect as such liens had prior to the Sale. Furthermore, Mr. Downes objects to any and all attempts by the Debtor, GRM, or any other party in interest to utilize and/or distribute such Sale Proceeds in contravention of his secured lien rights. The Sale Proceeds should only be distributed in conjunction with a plan or other proceeding in this case after all parties' rights have been adjudicated.

### B. GRM Should Be Compelled To Release All Claims Against The Estate

11. The Sale Motion, in conjunction with the APA, is vague and ambiguous regarding the extent of GRM's release of any and all claims, including the GRM Liens, that it may have against the Debtor.

12. The Sale Motion outlines the purchase price for the Sale, which includes GRM's credit bid of $12,000,000. Specifically, paragraph 29 of the Sale Motion provides, in pertinent part:

> Purchase Price. The purchase price . . . shall consist of [] the release of the Debtor. . . of all obligations, claims, rights, actions, causes of action, suits, liabilities, damages, debts, costs, expenses and demands whatsoever, in law or in equity, arising under, or otherwise relating to, (i) the DIP Financing, (ii) the Prepetition Loan Agreement, (iii) the Prepetition Revolving Credit Loan Agreement, and (iv) the Prepetition Loan Modification Agreement in an aggregate amount equal to $12,000,000 to be apportioned between the DIP Financing, the Prepetition Loan Agreement, the Prepetition Revolving Credit Loan Agreement, and the Prepetition Loan Modification Agreement, in each case, as determined by the Buyer in its sole and absolute discretion. . .

See Sale Motion, ¶ 29.

13. The aforementioned purchase price language addresses GRM's release of claims in the amount of $12,000,000, purportedly leaving a deficiency balance of approximately $8,342,080 against the estate.

14. In contrast, the APA provides that GRM will release "any claims it may have against the Debtor's estate except for claims arising out of or relating to the [Asset Purchase] Agreement." See APA, Article IX, subsection 9.17(b).

15. As a result, Mr. Downes respectfully requests that the Debtor and GRM provide confirmation that the Sale of the Assets will result in GRM's complete release of any and all claims against the estate, including but not limited to any deficiency claim.[1]

C. GRM Is Not Entitled To Any Third Party Claim Releases As Part Of The Sale

16. The proposed order (the "Proposed Sale Order")[2] authorizing the Sale of the Assets provides GRM with an impermissible release of third party claims against GRM and in

[1] It would not be equitable for a GRM deficiency claim to dilute the unsecured creditor class in this case.
[2] The Proposed Sale Order is attached as Exhibit E to the Sale Motion.

connection with the Assets. Specifically, all creditors are forever barred, estopped, and permanently enjoined from asserting against GRM such creditors' claims, liens, or interests in and to the Assets, including, but not limited to:

> a. Commencing or continuing in any manner any action or other proceeding against GRM, its successors, assets, or properties (collectively referred to herein as "GRM");
>
> b. Enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against GRM;
>
> c. Creating, perfecting, or enforcing any lien or other claim against GRM;
>
> d. Asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to GRM;
>
> e. Commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the Proposed Sale Order or other Court orders, or the agreements or actions contemplated or taken in respect thereof; or
>
> f. Revoking, terminating, failing, or refusing to transfer or renew any license, permit, or authorization to operate any of the Assets, or conduct any of the businesses operated with the Assets.

See Sale Motion, Exhibit E, ¶ 22.

17. The Proposed Sale Order further provides that:

> The consideration given by the Buyer [GRM] shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this . . . Order, including Paragraphs 21-23 hereof, which releases shall be deemed to have been given in favor of Buyer [GRM] by all holders of Liens against or interests in, or Claims against any of the Debtor or any of the Assets, . . .

Id. at Exhibit E, ¶ 24.

18. These proposed releases should not be permitted through a sale. Instead, in accordance with In re Master Mortgage Inv. Fund, Inc., 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994) and its progeny in this Court under the In re Zenith Elecs. Corp., 241 B.R. 92, 110 (Bankr.

D. Del. 1999) line of cases, any such releases of claims belonging to lienholders and creditors against GRM require the scrutiny and protection of a plan process. Accordingly, these vastly overreaching releases of third-party claims against GRM should not be permitted.

19. Under Zenith, the Court is to consider five (5) factors to determine whether a release of a non-debtor by the debtor is appropriate: (1) an identity of interest between the debtor and non-debtor such that a suit against the non-debtor will deplete the estate's resources; (2) a substantial contribution to the plan by the non-debtor; (3) the necessity of the release to the reorganization; (4) the overwhelming acceptance of the plan and release by creditors and interest holders; and (5) the payment of all or substantially all of the claims of the creditors and interest holders under the plan. In re Zenith Elecs. Corp., 241 B.R. at 110 (citing In re Master Mortgage Inv. Fund, Inc., 168 B.R. at 937; see also In re Coram Healthcare Corp., 315 B.R. 321, 335 (Bankr. D. Del. 2004). The lynchpin of such releases under these cases is ultimately the necessity of granting the releases to ensure the success of a plan. Here, there is no plan before the Court.

20. Moreover, under the Proposed Sale Order, non-consenting third parties such as Mr. Downes would be forced to grant releases. As this Court noted in Coram, a "provision of a plan of reorganization which purports to grant a release of claims by third parties against a non-debtor cannot be approved under the [Zenith] standards." In re Coram Healthcare Corp., 315 B.R. at 335 (citing In re Zenith Elecs. Corp., 241 B.R. at 111). The Court lacks authority to grant such releases over the objection of parties that may possess claims against the non-debtor. In re Coram Healthcare Corp., 315 B.R. at 335–36 (citing In re Digital Impact, Inc., 223 B.R. 1, 14 (Bankr. N.D. Okla. 1998) (bankruptcy court does not have jurisdiction to approve non-debtor releases by third parties); In re Arrowmill Dev. Corp., 211 B.R. 497, 506 (Bankr. D.N.J. 1997)

("Keeping in mind the Third Circuit's analysis that section 524(e) specifically limits the scope of the discharge, and that the Bankruptcy Code does not contemplate a discharge of nondebtors, this court holds that plans of reorganization may not contain provisions which discharge nondebtors."); In re Elsinore Shore Assocs., 91 B.R. 238, 252 (Bankr. D.N.J. 1988) (plan provisions deeming non-debtor proponents and their principals to be discharged and released from any and all claims were prohibited by the Code and relevant case law); In re Monroe Well Serv., Inc., 80 B.R. 324, 334 (Bankr. E.D. Pa. 1987) (debtors could not obtain confirmation of a plan which would attempt, over the objection of creditors, to discharge the obligations of non-debtors)).

21. Therefore, to the extent that the terms of the Sale Motion, the APA, the Proposed Sale Order, and/or any other related Sale pleadings or documents attempt to release claims held by Mr. Downes against GRM, Mr. Downes hereby objects to such terms and respectfully requests that the Sale Motion be denied to the extent that such impermissible releases are sought. Moreover, Mr. Downes expressly reserves his rights to bring such claims directly against GRM.

D. Joinder In Other Objections

22. Finally, Mr. Downes joins in similar, consistent objections, reservations of rights, and/or other requests that have been or may be filed by other creditors and/or parties in interest in this bankruptcy case in connection with the proposed Sale.

## III. CONCLUSION

**WHEREFORE**, for the foregoing reasons, Mr. Downes objects to and reserves his rights in connection with the proposed Sale of the Assets, and requests such other relief as may be appropriate and just.

Date: April 26, 2012

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

/s/ Thomas M. Horan

Thomas M. Horan (DE Bar No. 4641)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4339
Facsimile: (302) 661-7707
E-mail: thoran@wcsr.com

-and-

Robert S. Westermann, Esq.
Sheila deLa Cruz, Esq.
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Richmond, VA 23223
Telephone: (804) 771-9500
Facsimile: (804) 644-0957
E-mail: rwestermann@hf-law.com
sdelacruz@hf-law.com

*Counsel for Sean P. Downes*