IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CyberDefender Corporation,[1] ) | Case No.: 12-10633 (BLS) |
| ) | |
| Debtor. ) | Related Docket Nos. 10, 94, 99, 153, 158, 159, 160 and 161 |
| ) | |

Hearing Date: May 2, 2012 at 1:00 p.m.

## DEBTOR'S OMNIBUS REPLY TO OBJECTIONS TO DEBTOR'S MOTION FOR ORDERS (A) ESTABLISHING BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR, (B) APPROVING THE FORM AND MANNER OF NOTICES, (C) SETTING A SALE HEARING, (D) AUTHORIZING THE SALE OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (E) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (F) GRANTING RELATED RELIEF

*The above-captioned debtor and debtor in possession (the "Debtor") files this*

*Reply in support of Debtor's Motion for Orders (A) Establishing Bidding Procedures in*

*Connection with Sale of Substantially All Assets of the Debtor, (B) Approving the Form and*

*Manner of Notices, (C) Setting a Sale Hearing, (D) Authorizing the Sale Of the Assets Free and*

*Clear of All Liens, Claims, and Encumbrances, (E) Authorizing the Assumption and Assignment*

*of Certain Executory Contracts and Unexpired Leases, and (F) Granting Related Relief [Docket*

*No. 10] (the "Sale Motion").[2] In support of this Reply, the Debtor respectfully states as follows:*

---

[1] The last four digits of the Debtor's federal tax identification number are (5833). The Debtor's address is: 617 West 7th Street, Suite 1000, Los Angeles, CA 90017.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Sale Motion.

### Preliminary Statement

The Court should grant the Motion and overrule the objections filed by certain subordinated noteholders under Docket Nos. 153 and 159 (the "Objecting Junior Subordinated Noteholders") because the sale free and clear of the Objecting Junior Subordinated Noteholders' junior liens is authorized under three separate subsections of Section 363(f). Rather than play a constructive role in the bankruptcy case and sale process, the Objecting Junior Subordinated Noteholders laid in waiting for the entire case knowing full well of the Debtor's intent to sell its assets to GR Match, LLC ("GRM" or "Buyer") for substantially less than the amount of GRM's secured claims against the estate. The Objecting Junior Subordinated Noteholders' arguments are designed to jeopardize the only alternative to a liquidation – a going concern sale to GRM that will preserve jobs and the Debtor's business enterprise – in order to leverage a distribution to them on account of their claims when they are factually and legally entitled to none. Moreover, as set forth in GRM's Reply, the mere assertion of their objections violates the Subordination Agreement they signed in connection with the funding of monies to the Debtor which is enforceable under Section 510 of the Bankruptcy Code in order to preserve the integrity of the bankruptcy process.

Citing no binding authority on this Court, Objecting Junior Subordinated Noteholders argue that a sale must generate sufficient proceeds to satisfy the face value of all liens encumbering property to be authorized under section 363(f)(3) of the Bankruptcy Code. While the Debtor agrees that some courts have reached this conclusion, the vast majority of courts which have addressed the issue have ruled to the contrary – that 363(f)(3) only protects the value of the secured creditor's secured claims which, under Section 506, is limited to the

value of the property being sold. The Debtor will present evidence at the hearing on the Motion that it conducted a thorough and extensive sale process both prior to and after the Petition Date. Notwithstanding these efforts, no party was willing to top the $12 million credit bid of GRM, let alone offer sufficient proceeds to satisfy the approximately $20 million of GRM debt which would be necessary to generate any value for the Objecting Junior Subordinated Noteholders. As a result, the Court will have the evidentiary basis to determine that the Debtor's assets are being sold for their economic value, which is all that section 363(f)(3) requires to approve a sale over dissenting junior secured creditors.

In addition, a sale free and clear of the Objecting Junior Subordinated Noteholders' liens under Section 363(f)(4) is justified because the Objecting Junior Subordinated Noteholders' liens are in bona fide dispute. The Debtor is informed and believes that prior to the hearing on the Motion, the Official Committee of Unsecured Creditors (the "Committee") will be commencing an action against the Objecting Junior Subordinated Noteholders seeking, inter alia, to equitably subordinate the Objecting Junior Subordinated Noteholders' liens and claims or recharacterize such claims as equity contributions.

Lastly, Section 363(f)(5) authorizes a sale free and clear of the Objecting Junior Subordinated Noteholders' liens because the Objecting Junior Subordinated Noteholders could be compelled to accept a monetary satisfaction of its claims either through a cram down plan of reorganization or pursuant to a state law foreclosure action.

The Objecting Junior Subordinated Noteholders remaining objections are easily addressed. The Asset Purchase Agreement with GRM clearly provides for GRM's waiver of any remaining claims against the Debtor's estate thereby providing additional value for the Debtor's

estate. Second, the Objecting Junior Subordinated Noteholders' misread the release and injunction provisions of the proposed Order approving the Sale Motion. GRM and the Debtor did not intend, and the language in the Order does not provide, third party releases of GRM that existed prior to the consummation of the sale. While GRM is entitled to an injunction to protect it and the assets being acquired against third parties pursuing claims asserted against the Debtor prior to the sale, GRM is not seeking a release of third party claims that may be assertable against GRM for conduct up to and through closing of the sale. Third, the Order provides that the liens of the Objecting Junior Subordinated Noteholders, if any, will attach to the proceeds of the sale in the same validity, priority and amount as existed prior to the closing of the sale. Lastly, the Debtor does not seek authority to distribute the proceeds of the sale through the Motion at this time. Distribution will await further order of the Court pursuant to a confirmed plan of liquidation or any other lawful mechanism proposed to conclude this case.

Approval of the Sale Motion will not only pave the way for the Debtor's business to be sold as a going concern, including the assumption of several vendor contracts, but also will result in proceeds to the estate that can be used to fund a plan of liquidation and provide a recovery for unsecured creditors. For the reasons set forth below, the Debtor respectfully requests that the Court approve the Sale Motion as in the best interests of their estate and all creditors and overrule the objections.

## Facts And Relevant Procedural History

### A.    The Debtor's Bankruptcy Case and the Appointment of the Committee

1.    The Debtor filed its case on February 23, 2012 (the "Petition Date"). The Debtor also filed the Sale Motion on the Petition Date at Docket No. 10.

2.      On March 9, 2012, the Office of the United States Trustee appointed an

Official Committee of Unsecured Creditors (the "Committee"). The Committee retained counsel

promptly thereafter.

**B.      The Bidding Procedures Order and the Stalking Horse Agreement with the Buyer**

3.      On March 14, 2012, the Court entered the *Order (A) Establishing Bidding*

*Procedures in Connection with Sale of Substantially All Assets of the Debtor, (B) Approving the*

*Form and Manner of Notices, (C) Setting a Sale Hearing, (D) Authorizing Procedures in*

*Connection with the Assumption and Assignment of Certain Executory Contracts and Unexpired*

*Leases, and (E) Granting Related Relief* [Docket No. 94, as amended by Docket No. 123] (the

"Sale Procedures Order").

4.      The Sale Procedures Order approved the Debtor's entry into an Asset

Purchase Agreement with GRM. Pursuant to the Asset Purchase Agreement, GRM -- the

Debtor's senior secured lender with pre-petition secured claims in excess of $16 million and the

provider of up to $4,610,000 of debtor in possession financing – offered a package of

consideration which consisted of the following: (a) a credit bid of $12 million of its secured

claims; (b) a waiver of any remaining claims against the Debtor's estate; and (c) $250,000 in

cash. The assets proposed to be sold to GRM under the APA included substantially all of the

operating assets of the Debtor to which GRM's liens attached as well as avoidance actions

against Key Business Partners[3] and any avoidance actions against GRM (collectively the

"Avoidance Actions"). As GRM did not assert a lien against the Avoidance Actions, it could

---

[3] Under the APA, Key Business Partners are as set forth on Schedule 2.01(a)(xiv) to the Asset Purchase Agreement.

not credit bid its liens to acquire such assets. The $250,000 cash payment to the Debtor's estate

solved that issue provided that the value of the Avoidance Actions to the Debtor's estate did not

exceed $250,000[4].

5.      The Sale Procedures Order, among other things, established the

procedures for the solicitation and consideration of competing bids for the proposed to be sold to

the Successful Bidder. Importantly, the post-petition sale process contemplated by the Sale

Procedures Order did not, as often is the case, seek an extremely compressed auction process.

Rather, the Sale Procedures Order established April 26, 2012 as the deadline for competing bids,

and scheduled for May 1, 2012 the Auction of the Acquired Assets, if competing bids were

obtained.   Accordingly, bids were not due until approximately 65 days after the petition was

filed and sale approval would not occur until approximately 72 days after the petition was filed.

The extended process was intended to facilitate a thorough marketing process designed to

maximize value for all stakeholders.

C.      **The Sales Process**

6.      A thorough and extensive sale process is precisely what followed.

XRoads Solutions Group, LLC ("XRoads"), the Debtor's financial advisor and investment

banker, contacted 120 potential bidders (approximately 90 strategic and 30 financial) and an

additional 230 parties via an internet deal flow exchange site, for a total of 350 potential bidders.

XRoads approached the Objecting Junior Subordinated Noteholders, but were informed that they

---

[4] The Debtor conducted an analysis of the avoidance actions against the Key Business Partners and concluded that the value of such avoidance actions was in the range of $200,000 - $300,000 before litigation costs.

were not interested in pursuing an acquisition of the Debtor or providing further financing. Each

potential bidder received a marketing teaser, summary of bid procedures, and confidentiality

agreement. XRoads also created an online dataroom containing the Debtor's contracts, historical

financials, organizational information, a management presentation and financial projections. A

total of 79 parties responded to the marketing teaser and 11 parties ultimately signed

nondisclosure agreements to access the online dataroom. Five potential bidders participated in

conference calls with management for further due diligence. Ultimately, however, no bids were

received by the Bid Deadline. While several parties were interested in certain aspects of the

Debtor's business, no party could even come close to the consideration offered by GRM under

the APA.

       7.     The Debtor kept the Committee fully informed of its progress during the

sale process. The Debtor facilitated periodic calls with Committee counsel and provided the

Committee with written reports identifying potential buyers, the status of communications and

reasons why certain investors had passed on the opportunity. At no time during the entire sale

process did the Objecting Junior Subordinated Noteholders request a dialogue with the Debtor

regarding the sale process. Had that occurred, the Debtor would have brought the Objecting

Junior Subordinated Noteholders under the tent in order to insure the transparency of the process.

**D.**     **The Settlement Between the Committee and the Buyer**

       8.     Pursuant to the Final DIP Order entered in this case, the Committee has

the right to challenge the liens asserted by GRM and the Objecting Junior Subordinated

Noteholders. *See* Docket No. 108 at ¶ 9. Significantly, paragraph 9 of the Final DIP Order vests

the Committee with standing (a) to bring any claims or object to or challenge any of the Claims

Stipulations in the Final DIP Order, including in relation to (i) the validity, extent, perfection or

priority of the prepetition liens and claims of GRM and of the Subordinated Notes or (ii) the

validity, allowability, enforceability, priority, status or amount of the prepetition liens and claims

of GRM and Purchaser Security Interests (as such term is defined in the Final DIP Order); or (b)

to bring suit against GRM or the Objecting Junior Subordinated Noteholders in connection with

or related to the matters covered by the Claims Stipulations or such other matters as to which the

Committee may have standing to bring claims.  The Committee's right to challenge the

liens/claims of GRM and the Objecting Junior Subordinated Noteholders expires on the earlier of

(a) the date that is the later of (i) seventy-five (75) days after the Petition Date or (ii) sixty (60)

days after the date of appointment of a Committee; or (b) the date of entry of an order approving

the Sale (cumulatively, the "Challenge Period").

         9.     Prior to the expiration of the Challenge Period and the deadline to object

to the Sale Motion, the Committee articulated avoidance claims against GRM.  As discussed in

more detail in the *Emergency Motion of the Official Committee of CyberDefender Corporation*

*Pursuant to Bankruptcy Rule 9019 for the Entry of an Order Approving Settlement Agreement by*

*and among the Debtor, the Official Committee of Unsecured Creditors and GR Match, LLC* filed

on April 27, 2012 at Docket No. 163 (the "Settlement Motion"), the Committee claimed that

certain liens granted to GRM prepetition were avoidable as preferential transfers and certain cash

payments made to GRM were also recoverable as preferences.   After extensive, arms-length

negotiations between the Committee and GRM, GRM agreed to resolve the avoidance claims

asserted against it by the Committee by agreeing to increase the cash proceeds payable to the

Debtor's estate at closing from $250,000 to $500,000. A copy of the amendment to the Asset

Purchase Agreement reflecting this revision was filed as an exhibit to the Settlement Motion and

is attached hereto as **Exhibit A** for the Court's reference.

E.    **The Objections to the Sale Motion**

        10.    The Sale Procedures Order also fixed April 26, 2012 at 4:00 p.m. for

objections to the Sale Motion, and May 2, 2012 at 1:00 p.m. for the hearing on the Sale Motion.

        11.    The Debtor received the following objections to the Sale Motion:

- Objection of Certain Holders of 9% Subordinated Convertible Promissory Notes to Debtor's Motion for Approval of the Sale of Substantially All of Its Assets (Filed 4/25/12) [Docket No. 153].

- Sean P. Downes' Objection and Reservation of Rights in Connection with the Debtor's Proposed Sale of Assets to GR Match, LLC (Filed 4/26/12) [Docket No. 159].

- Joinder of Certain Holders of 9% Subordinated Convertible Promissory Notes to Certain Objections Raised by Sean P. Downes to Debtor's Motion for Approval of the Sale of Substantially All of Its Assets (Filed 4/26/12) [Docket No. 160].

- Oracle's Rights Reservation and Objection Regarding (I) Debtors Motion for Orders: (A) Establishing Bidding Procedures in Connection with Sale of Substantially All Assets of the Debtor, (B) Approving the Form and Manner of Notices, (C) Setting a Sale Hearing, (D) Authorizing the Sale of the Assets Free and Clear of All Liens, Claims, and Encumbrances, (E) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (F) Granting Related Relief; and (II) Unexpired Lease or Executory Contract Assumption And Cure Notice (Filed 4/26/12) [Docket No. 158].

- Objection of Vindicia, Inc. to Proposed Cure Amount for Assumption and Assignment of Executory Contract (Filed 4/26/12) [Docket No. 161].

12.     The Objecting Junior Subordinated Noteholders do not contend that the

sale process was flawed.  The Objecting Junior Subordinated Noteholders do not contend that

GRM is not providing fair consideration for its purchase of the Debtor's assets.  The Objecting

Junior Subordinated Noteholders do not contend that GRM does not have valid first priority liens

encumbering the Debtor's assets.  Rather, the Objecting Junior Subordinated Noteholders argue

that the Court cannot approve any sale that they do not consent to or does not provide for

payment of the Objecting Junior Subordinated Noteholders' claims in full.  Moreover, the

Objecting Junior Subordinated Noteholders attempt to create ambiguity in the APA and Sale

Order where none exists.  As discussed below, the Objecting Junior Subordinated Noteholders'

attempt to hijack the sale process is not legally justified and the Court should overrule their

objection.

13.     The two remaining objections to the Sale Motion are filed by contract

counter parties relating to cure amounts—Oracle and Vindicia.  The Buyer is in discussions with

such counterparties to consensually resolve the objections.  If no agreements can be reached, the

Buyer will elect not to assume such contracts as permitted under the terms of the Asset Purchase

Agreement and the Sales Procedure Order.

## **REPLY**

A.     **The Court Should Overrule the Objection Of Certain Holders Of 9% Subordinated Convertible Promissory Notes To Debtor's Motion For Approval Of The Sale Of Substantially All Of Its Assets**

I.     **The Subordination Agreement Between the Objecting Junior Subordinated Noteholders and GRM Prohibits the Objecting Junior Subordinated Noteholders from Objecting to the Sale Motion**

14.     As set forth in *GR Match, LLC's Reply to (1) Objection of Certain Holders of 9% Subordinated Convertible Promissory Notes to Debtor's Motion for Approval of the Sale of Substantially All of Its Assets; and (2) Sean P. Downes' Objection and Reservation of Rights in Connection with the Debtor's Proposed Sale of Assets to GR Match, LLC* (the "GRM Reply"), the Objecting Junior Subordinated Noteholders are parties to certain Subordination Agreements, the terms of which prohibit the Objecting Junior Subordinated Noteholders from prosecuting their objections to the Sale Motion.  The Debtor joins in the arguments set forth in the GRM Reply and incorporates such arguments as if fully set forth herein.  For this reason alone, the Court should overrule the Objecting Junior Subordinated Noteholders' objection.

## II.   The Sale Can Be Approved Free and Clear of Liens, Claims and Encumbrances Under 11 U.S.C. § 363(f).

15.     Focusing solely on section 363(f)(3), the Objecting Junior Subordinated Noteholders object to the sale free and clear of liens because they believe that 363(f)(3) prohibits the sale to GRM on a free and clear basis.  However, section 363(f) authorizes a debtor to sell property under section 363(b) of the Bankruptcy Code "free and clear of any interest in such property of an entity other than the estate" if any *one* of five enumerated conditions is satisfied:

      a)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;

      b)  such entity consents;

      c)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

      d)  such interest is in bona fide dispute; or

      e)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

16.    "Since the five conditions . . . are phrased in the disjunctive, property may be sold free and clear of interests if any one of the five conditions is satisfied." *In re Gulf States Steel*, 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002).  Here, the Debtor has satisfied at least three of these conditions:  (i) the price at which the Assets are being sold are greater than the aggregate value of all liens on such Assets under section 363(f)(3); (ii) the Objecting Junior Subordinated Noteholders' interests in the Assets are the subject of a bona fide dispute under section 363(f)(4); and (iii) the Objecting Junior Subordinated Noteholders could be compelled in a legal or equitable proceeding to accept a money satisfaction of their interests in the assets under section 363(f)(5).

<u>Section 363(f)(3) is Satisfied Here Because the Price at which the Assets are Being Sold are Greater than the Aggregate Value of all Liens on Such Assets.</u>

17.    Section 363(f)(3) provides that property may be sold under section 363(b) free and clear of liens if "such interest is a lien and the price at which the property is to be sold is greater than the aggregate value of all liens on such property." 11 U.S.C. § 363(f)(3).  Citing *Criimi Mae Servs. L.P. v. WDH Howell, LLC (In re WDH Howell, LLC)*, 298 B.R. 527, 532-34 (D.N.J. 2003), the Objecting Junior Subordinated Noteholders urge this Court to deny approval of the sale free and clear of liens because the proposed purchase price is less than the "face value" of the secured claims.  While this view has been adopted by some courts (*See, Criimi Mae* and *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)* 391 B.R. 25 (BAP 9th Cir 2008)), this view is not binding on this Court and has been widely criticized.  Further, as the Objecting Junior Subordinated Noteholders point out, contrary authority exists *In re Beker Indus, Corp.*, 63 B.R. 474, 475-78 (Bankr. S.D.N.Y. 1985).

18.     Under the *Beker* or majority line of cases, "value" in section 363(f)(3)

means the value of the collateral underlying the lien – i.e., the "actual value" – rather than the

face amount of such lien. *Id.* at 476 ("value" means the "actual value as determined by the

Court, as distinguished from the amount of the lien."). As the *Beker* court explained, this

meaning is clear from the plain language of section 363(f)(3) as well as the plain meaning of

section 506(a) of the Bankruptcy Code, which compels the same conclusion. *Beker*, 63 B.R. at

475. In reaching its holding, the *Beker* court relied on the well founded rule of statutory

construction that a statute should be interpreted consistently throughout. *See In re Be*ker, 63

B.R. at 475. As the *Beker* court explained:

> It is thus plainly indicated that the term "value," as used in
> § 506(a) with respect to the interest of a secured creditor,
> means its actual value as determined by the Court, as
> distinguished from the amount of the lien. That indication
> and the last sentence of § 506(a) requiring determination of
> value upon disposition of an asset standing as collateral
> strongly support the conclusion that the term "value" as
> employed in § 363(f)(3) is to be similarly interpreted.

*Id. See also United Sav. Assoc. v. Timbers, 484 U.S. 365, 372 (1988) ("The*

*phrase 'value of such creditor's interest in § 506(a) means the 'value of the collateral'").*

19.     Courts have followed *Beker* for over 20 years. *See, e.g., In re Hatfield*

*Homes, Inc.,* 30 B.R. 353, 355 (Bankr. E.D. Pa. 1983); *In re Oneida Lake Dev., Inc.*, 114 B.R.

352, 356-57 (Bankr. N.D.N.Y. 1990); *In re Collins*, 180 B.R. 447, 451 (Bankr. E.D. Va. 1995)

(holding that the term "value" in Section 363(f)(3) should be given the same definition as

"value" under Section 506(a) of the Bankruptcy Code, and therefore, "means actual value as

determined by the Court, rather than the face amount of the lien"); *In re Netfax, Inc.*, 335 B.R.

85, 92 (D. Md. 2005); *In re Boston Generating, LLC*, 440 B.R. 302, 332-33 (Bankr. S.D.N.Y.

2010).

        20.     The case law cited by Objecting Junior Subordinated Noteholders is not

binding on this Court and represents the minority view that the "value of all liens" under section

363(f)(3) is to be interpreted to mean that the sale price must not be less than the face amount of

all of the claims of the creditor whose collateral is being sold.   As the Souther District of New

York Recently opined:

> As this Court previously held, the best evidence of the value of the
> Debtors' assets is the $1.1 billion Constellation bid. Based on Mr. Hunter's
> testimony, the proceeds of the Sale Transaction may be insufficient to pay
> the First Lien Debt in full; if that is the case, then the Second Lien
> Lenders' claims are not secured. Under *Beker* and the many decisions of
> other Bankruptcy Courts following its reasoning, I find that section
> 363(f)(3) is satisfied. To hold otherwise would effectively mean that most
> section 363 sales of encumbered assets could no longer occur either (a)
> absent consent of all lienholders (including those demonstrably out of the
> money) or (b) unless the proceeds of the proposed sale were sufficient to
> pay the face amount of all secured claims in full. If section 363(f)(3) and
> (as discussed below) section 363(f)(5) are read in the manner suggested by
> the Second Lien Lenders, it seems unlikely that a Court, under any
> circumstance, could approve a non-consensual section 363 sale. As both a
> practical matter and a matter of statutory construction, that cannot be the
> case. It is hard to imagine that Congress intended to so limit a debtor's
> power to dispose of encumbered assets, particularly where such
> disposition otherwise satisfies the requirements of section 363(b).

*Boston Generating, LLC*, 440 B.R. at 332-33

        21.     Given the Debtor's marketing efforts both pre and postpetition, there can

be no doubt that the highest and best offer achieved through the sale process undertaken by the

Debtor is, by definition, a true market test of the value of the assets satisfying the condition set

forth in section 363(f)(3) of the Bankruptcy Code.  To conclude otherwise would render the sales

process and chapter 11 meaningless as debtors who are saddled with debt who choose to sell

their business under 363(b) could not reorganize or restructure their balance sheet unless they

received a bid that satisfied the face amount of all secured debt.

> Section 363(f)(4) is Satisfied Here Because the Objecting Junior Subordinated
> Noteholders' Interest in the Assets is Subject to a Bona Fide Dispute.

22.    Under section 363(f)(4), the Debtor is entitled to sell the Assets free and

clear of the Objecting Junior Subordinated Noteholders' Interests because such interests are in

bona fide dispute.  The Court is not required to resolve the underlying dispute as a condition to

authorizing the sale under this provision, but rather need only determine that a bona fide dispute

in fact exists.  *See* Collier on Bankruptcy, ¶ 363.06[05] (2012) (citing *In re Octagon Roofing*,

123 B.R. 583, 590 (Bankr. N.D. Ill. 1991)).  Most courts agree that a bona fide dispute exists

when there is "an objective basis for either a factual or a legal dispute as to the validity of the

debt."  *See Union Planters Bank v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624, 627 (8th

Cir. BAP 2004), *quoting In re Busick*, 831 F.2d 745,750 (7th Cir. 1987); *see also Octagon

Roofing*, 123 B.R.

at 590.

23.    Pursuant to the Final DIP Order entered in this case, the Committee has

the right to challenge the liens asserted by the Objecting Junior Subordinated Noteholders

through the Challenge Period.  *See* Docket No. 108 at ¶ 9.  The Debtor is informed and believes

that the Committee will assert a challenge by the Challenge Period to, inter alia, recharacterize

the Objecting Junior Subordinated Noteholders' claims as equity and to equitably subordinate

their claims.  Accordingly, a bona fide dispute exists with respect to the Objecting Noteholder's

claims and liens and a sale of the Assets free and clear of such claims and liens is authorized

under section 363(f)(4).

> ### Section 363(f)(5) is Satisfied Here Because the Objecting Junior Subordinated Noteholders' Could be Compelled to Accept a Money Satisfaction of their Interest.

24.     The Debtor has also satisfied the requirements of section 363(f)(5)

because the Objecting Junior Subordinated Noteholders could be "compelled in a legal or

equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5).

"Section 363(f)(5) does not require that the sale price for the Property must exceed the value of

the interests, but rather, only that the mechanism exists to address extinguishing the lien or

interest without paying such interest in full." *In re Gulf States Steel,* 285 B.R. 497, 508 (Bankr.

N.D. Ala. 2002).

25.     Under Third Circuit law, if the Objecting Junior Subordinated

Noteholders' interest are subject to monetary valuation and distribution if this case were

converted to a chapter 7 case, then section 363(f)(5) is satisfied. *In re TWA*, 322 F.3d 283, 290-

91 (3d Cir. 2003). *See also In re Kellstrom Industries, Inc.,* 282 B.R. 787, 794 (Bankr.D.Del.

2002) Here, if this case were converted to one under chapter 7, the Objecting Junior

Subordinated Noteholders' interests are capable of monetary valuation and distribution.

26.     The ability to "cram down" the Objecting Junior Subordinated

Noteholders' interests under a plan of reorganization is also recognized as another such a legal or

equitable proceeding. *See, e.g., In re Gulf States Steel*, 285 B.R. at 508 (finding that, under

Section 363(f)(5), creditors could be compelled to accept a money satisfaction in a cram down

plan in satisfaction of liens or interests); *In re Grand Slam USA, Inc.,* 178 B.R. 460, 464 (E.D.

Mich. 1995) (finding that, by analogy to a cram down under Section 1129(b)(2)(A), Section

724(b)(2) also creates a mechanism by which lien creditors are compelled to receive a money

satisfaction that is less than full payment for their interest in fulfillment of Section 363(f)(5)); *In

re Terrace Chalet Apartments, Ltd.,* 159 B.R. 821, 829 (Bankr. N.D. Ill. 1993); *In re Healthco

Int'l, Inc.,* 174 B.R. 174,176 (Bankr. D. Mass. 1994) ("if Congress intended (f)(5) to exclude

bankruptcy law, Congress would presumably have used the same phrase" "applicable

nonbankruptcy law" as it used in subparagraph (f)(1)); *In re Levitt & Sons, LLC*, 384 B.R. 630

(Bankr. S.D. Fla. 2008).   Because the Objecting Junior Subordinated Noteholders could be

compelled to receive less than full payment for their interest in the Assets and could be

compelled to receive a monetary satisfaction for their interests under a plan of reorganization,

this provision of section 363(f)(5) is also satisfied.

27.    Thus, the Court has ample basis under section 363(f) to authorize the sale

of Assets free and clear of liens , whether under section 363(f)(3) because the value of the liens

being sold is the actual value of the liens, under section 363(f)(4) because a bona fide dispute

exists over the nature and validity of the Objecting Junior Subordinated Noteholders' security

interest in the Assets, or under section 363(f)(5) because the Objecting Junior Subordinated

Noteholders could be compelled under Third Circuit law to accept a monetary satisfaction of

their claim.

**III.    The Sale Order Already Provides That Existing Liens Will Attach To The
Proceeds Of The Sale To the Same, Extent, Priority And Validity As
Existed Prior To The Sale**

28.    The Objecting Junior Subordinated Noteholders argue that "the Sale Order must provide for the liens and security interests held by the Certain Noteholders to attach to the proceeds of the sale." Obj. at ¶ 12.    The Sale Order already provides that the liens of existing lienholders will attach to the sale proceeds to the same, extent, validity, and priority that existed prior to the sale as follows:

> Pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f), the Debtor is authorized to transfer the Assets to Buyer on the Closing Date in accordance with the Agreement . . . and such transfer shall constitute a legal, valid, binding, and effective transfer of such Assets and shall vest Buyer with title to the Assets and, other than the Assumed Liabilities, shall be free and clear of all Liens, Claims and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, with all such Liens, Claims or other interests to attach to the net cash proceeds, if any, ultimately attributable to the property against or in which such Liens, Claims or interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens, Claims or interests now have against the Assets, subject to any rights, claims and defenses the Debtor or its estate, as applicable, may possess with respect thereto.  Upon the Closing, Buyer shall take title to and possession of the Assets in accordance with the Agreement . . . subject only to the Assumed Liabilities.

Sale Order ¶ 8 (emphasis added).

29.    While the Objecting Noteholder's liens and claims will attach to the sale proceeds with the same validity, priority and amount as existed prior to the sale, the practical reality is that even if the Objecting Junior Subordinated Noteholders' liens are valid, they do not extend to the cash proceeds under the Asset Purchase Agreement.  That is because the cash proceeds under the Asset Purchase Agreement are being received on account of the Debtor's sale of the Avoidance Actions to the Buyer.  Since the Objecting Junior Subordinated Noteholders do

not have a lien on the Avoidance Actions, the proceeds of the Avoidance Actions are

unencumbered estate funds to be distributed according to the priorities set forth in the

Bankruptcy Code.

## IV.   The Sale Order Does Not Grant GRM A Third Party Release.

30.    The Objecting Junior Subordinated Noteholders argue that paragraph 22

of the proposed order approving the Sale Motion grants Buyer an impermissible third party

release of claims. The Objecting Junior Subordinated Noteholders are mistaken.  There is

nothing in the Sale Order that releases Buyer from third party claims that existed against it prior

to the closing of the sale.   To the contrary, the language in the proposed Sale Order is expressly

limited by subject matter to the Assets being acquired by the Buyer as well as temporally by the

pre-closing time period for which any claims may have arisen as follows:

> Except with respect to the Assumed Liabilities, or as otherwise
> expressly provided for in this Transaction Approval Order or the
> Agreement, all persons and entities, including, but not limited to,
> all debt holders, equity security holders, governmental, tax and
> regulatory authorities, lenders, trade creditors, litigation claimants
> and other creditors, holding Liens, Claims or other interests of any
> kind or nature whatsoever against or in all or any portion of the
> Assets (whether legal or equitable, secured or unsecured, matured
> or unmatured, contingent or non-contingent, liquidated or
> unliquidated, senior or subordinate), arising under or out of, in
> connection with, or in any way relating to the Debtor, the Assets,
> the operation of the Debtor's business prior to the Closing Date or
> the transfer of the Assets to the Buyer in accordance with the
> Agreement . . . .

Sale Order, ¶ 22 (emphasis added).

31.    Section 363(f) of the Bankruptcy Code authorizes a debtor to sell property

under section 363(b) "free and clear of any interest in such property of an entity other than the

estate". 11 U.S.C. § 363(f).  The language contained in the proposed sale order at paragraph 22

is standard relief granted to purchasers of assets in this District under section 363(f).  *See, e.g., In*

*re Graceway Pharmaceuticals, LLC*, Case No. 11-13036 (PJW) (Docket No. 306 at ¶ 12).

32.     Nonetheless, the Buyer has agreed to add the following additional

language to eliminate any concern of the Objecting Junior Subordinated Noteholders on this

point: "For the avoidance of doubt, nothing in this Order shall release any third party claims

against Buyer that existed prior to the closing of the Sale except as expressly agreed by such

third party in writing. "  With this clarification, the Debtor submits that the Objection should be

overruled.

**B.      Sean P. Downes' Objection and Reservation of Rights in Connection with the
         Debtor's Proposed Sale of Assets to GR Match, LLC Should be Overruled**

33.     Sean Downes filed an Objection and Reservation of Rights to the Sale

Motion (the "Downes' Objection") at Docket No. 159.  For the same reasons set forth above and

in the GRM Reply, Downes is not entitled to assert the Downes Objection pursuant to the

Subordination Agreement he executed in favor of GRM and the Court should overrule the

Downes Objection.  Nonetheless, the Debtor responds to the Downes Objection on the merits.

34.     Downes objects to "any and all attempts by the Debtor, GRM, or any other

party in interest to utilize and/or distribute such Sale Proceeds in contravention of his secured

lien rights."  Downes Obj. at ¶ 10.  The proposed Sale Order does not dictate how the Debtor

may use or distribute the proceeds of the sale.

35.     Downes further objects that the "Sale Proceeds should only be distributed

in conjunction with a plan or other proceeding in this case after all parties' rights have been

adjudicated." *Id*. Again, there is nothing in the Sale Order that permits the Debtor to distribute

the proceeds of the sale without further Court order. The Debtor will revise the Sale Order to

explicitly provide that the Sale Proceeds will be distributed only after notice and hearing to the

Objecting Junior Subordinated Noteholders and other parties in interest.

36.     Downes argues that the Sale Motion and APA are vague as to whether the

Buyer will release all of its claims against the estate including its deficiency claims against after

the closing of the sale. However, section 9.17(b) of the APA entitled "Releases" clearly provides

as follows: "Effective as of the Closing, Buyer hereby releases any claims it may have against

the Debtor's estate except for Claims arising out of or relating to this Agreement."

37.     Finally, Downes argues that the proposed Sale Order contains third party

releases in favor of the Buyer that are only permissible through a plan and not a sale order. As

discussed above, the Debtor has amended the proposed Sale Order to clarify that third party

claims against the Buyer that existed prior to the sale are not impacted by the Sale Order.

**C.     Debtors' Reply to Objection of Vindicia, Inc to Proposed Cure Amount for
Assumption and Assignment of Executory Contract.**

38.     Vindicia, Inc. filed an objection to the proposed cure amount for its

contract at Docket No. 161 (the "Vindicia Objection"). The Debtor is informed and believes that

the Buyer is in discussion with Vindicia regarding the potential assumption and assignment of

the Vindicia contract to the Buyer. If no agreement can be reached between the parties on the

cure amount, the Vindicia contract will not be assumed.

**D.**     **Debtors' Reply to Oracle's Objection and Reservation of Rights Regarding the Sale Motion.**

        39.      Oracle filed an objection and reservation of rights regarding the Sale Motion at Docket No. 158 (the "Oracle Objection"). Likewise, the Buyer is in discussion with Oracle regarding the potential assumption and assignment of the Oracle contracts to the Buyer. If no agreement can be reached between the parties on the cure amount, the Oracle contracts will not be assumed.

**Notice**

         Notice of this Reply has been provided to: (i) Office of the United States Trustee for the District of Delaware; (ii) Counsel to the Official Committee of Unsecured Creditors, (iii) Counsel to GR Match, LLC; and (vi) Counsel to each of the objectors.

*[Remainder of page intentionally left blank]*

## Conclusion

Based on the foregoing, the Debtor respectfully requests that the Court overrule

each of the objections, and approve the Sale Motion and the Sale, free and clear of liens,

claims and interests as requested by the Sale Motion, and grant such other relief as is just and

proper.

Dated: April 30, 2012                    PACHULSKI STANG ZIEHL & JONES LLP


                                         By: _____
                                            Jeffrey N. Pomerantz (Admitted *Pro Hac Vice*)
                                            James E. O'Neill (DE Bar No. 4042)
                                            Shirley S. Cho (Admitted *Pro Hac Vice*)
                                            919 North Market Street, 17th Floor
                                            P.O. Box 8705
                                            Wilmington, DE  19899-8705
                                            Telephone: 302/652-4100
                                            Facsimile: 302/652-4400
                                            E-mail:jpomerantz@pszjlaw.com
                                                  joneill@pszjlaw.com
                                                  scho@pszjlaw.com

                                         Attorneys for Debtor and Debtor in Possession